**People of the State of Illinois, Defendant in Error, v. Cornelius Webb, Plaintiff in Error.**

**Gen. No. 50,082.**

First District, Third Division.

June 17, 1965.

William Elman and Ronald S. Davis, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney of Cook County, Fred G. Leach and George Kenney, Assistant Attorneys General, Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Defendant sued out a writ of error from the Supreme Court of Illinois to the circuit court of Cook County, criminal division, to review the conviction by the court without a jury of the defendant for possession of narcotic drugs in violation of the Uniform Narcotic Drug Act. The defendant was sentenced to serve not less than five years nor more than ten years in the Illinois State Penitentiary. The Supreme Court of Illinois transferred the case to this court.

The defendant contends that the State failed to prove beyond a reasonable doubt that he was guilty of the possession of narcotic drugs, and that People's witness, John D. Endriz, should not have been allowed to testify since his name was not included in the list of witnesses served upon defendant's attorney.

The testimony offered on behalf of the People and that offered on behalf of the defendant is in many respects contradictory and for that reason we will summarize the testimony of each.

The People's testimony was substantially as follows:

William Mattingly, a federal narcotics agent, testified that on the afternoon of November 12, 1958, a

fellow narcotic agent, Ralph Eckhardt, drove him and an informer, James Dunn, also known as "Stainless Steel," to 47th and South Park in Chicago, Illinois. Mattingly and the informer went into a Walgreen's Drug Store at the above intersection around 5:00 p. m., and Eckhardt proceeded on with the car. Mattingly and the informer met with the defendant's wife, Dorothy, shortly thereafter, and at about 5:30 the defendant entered the drug store. The defendant offered to obtain "some stuff" for Mattingly and promised that "the price will be right," $90 for ½ ounce of heroin. Mattingly balked at the price and the defendant stated "it's high this time but later on it will be cheaper, after I get to know you and do business with you." Mattingly then gave $90 to the defendant in currency, the numbers of which bills had been previously recorded. After Mattingly gave the defendant the money, the defendant and his wife, the informer and Mattingly went by cab to the vicinity of 35th and South Park. Eckhardt had been observing what transpired in Walgreen's Drug Store from a clothing store on the south side of 47th. Eckhardt trailed the cab to 35th and South Park. Mattingly, defendant's wife and the informer entered Stelzer's restaurant at that location at about 6:00 p. m. The defendant remained outside. Eckhardt, having parked his car, also walked into Stelzer's restaurant and seated himself at a bar stool where he could see but not hear the others. At about 8:30 p. m. the defendant entered the restaurant and joined the others. The defendant then passed a brown manila envelope to Mattingly under the table. Agent Eckhardt was still seated at the bar at the time. Mattingly then returned to his office in the Federal Building and met with Agent Eckhardt. He and Eckhardt initialed the envelope that Mattingly received from the defendant. Mattingly thereupon conducted a field

368

test of a portion of the white-powder contents of the envelope. The test indicated that the white powder was an opiate. The envelope was then initialed by Mattingly and Eckhardt and dated "11–12–58" by Eckhardt and noted "Ill." by Mattingly. At one point in his testimony, Mattingly stated that the informer also initialed the envelope. He later said that this was incorrect. The envelope was placed in a locked cabinet in the Narcotics Bureau, from which it was removed on November 13 by Mattingly. The envelope was then placed in another envelope which was then sealed and delivered to the laboratory of federal chemist John Endriz by Mattingly. On November 18, Endriz broke the seal and removed the original envelope upon which he placed his initials and the laboratory number "7731." Chemical tests disclosed the contents to be diacetylmorphine hydrochloride commonly known as heroin. The remaining contents of the original envelope were placed in a third envelope which was sealed and stapled to the second envelope. All three envelopes were initialed by Endriz and his fellow chemist John W. Fonner, and were then returned to the office vault.

Mattingly further testified that on November 18, 1958 he was in defendant's home for about three hours, and that the defendant, his wife, and the informer, "Stainless Steel," were also present. The meeting had been prearranged by the informer. Mattingly testified that on this date he gave the defendant $350.00 for the purchase of narcotics. During the time he was present at the home Mattingly admitted that he was involved in an altercation with defendant's wife, and that he "pulled" his pistol on her.

During the trial the three envelopes heretofore referred to were admitted into evidence without objection.

369

The informer did not testify at the trial as the two narcotics agents did not know his whereabouts at the time.

Narcotics agent Eckhardt's testimony was substantially the same as that of Mattingly. He testified that while sitting at the bar in Stelzer's Restaurant he saw the defendant reach under the table. After the others left the restaurant Eckhardt also left and returned to the office where he met Mattingly. They initialed the package that Mattingly had as evidence and placed it in the cabinet; the following morning the first envelope was placed in another envelope and delivered to the chemist's office. Eckhardt also initialed the second envelope. He further testified that on November 18, 1958 he had the building in which the defendant lived under surveillance and that he saw Mattingly go into the building with the defendant but did not see Mattingly leave. Eckhardt remained in the area for four or five hours. There is a slight discrepancy as to how long Mattingly was in the building with the defendant on this date, but it is of no importance in this case.

The defendant testified that he was a former addict but was not addicted in November, 1958. He knew the informer "Stainless Steel" for about two weeks at that time. He did not know Mattingly before November 12, 1958. He arrived home on November 12 to find that Mattingly and "Stainless Steel" were there. "Stainless Steel" introduced him to Mattingly, who at the time used the assumed name of Bill Jennings. They asked the defendant for some narcotics. The defendant testified that he told them that he could not get any for them; that Mattingly kept trying to convince the defendant that it would be to the defendant's advantage to deal with them. The defendant also testified that he told Mattingly that he had been a former addict and that he didn't want to get involved with narcotics.

Mattingly then showed him some money and the defendant said he would call a friend of his and attempt to obtain for him an "ounce of pure" which had been requested by Mattingly. The defendant then stated that he pretended to make a phone call, and shortly thereafter told Mattingly that he could get him the narcotics requested for $350 in about twenty minutes. The defendant took the $350 from Mattingly and left the house with the understanding that he was going to purchase narcotics. The defendant testified that a little while later he called his wife and told her to gather their things together and slip out of the house. The defendant testified that he did not return to his house that evening and that he did not transfer any narcotics to Mattingly. The defendant stated that the next time he saw Mattingly was on December 12, 1958 when Mattingly arrested him. There was a hearing before United States Commissioner Pike. The defendant claimed that he had never seen the People's exhibits before and such exhibits were not presented in the hearing before the Commissioner. He further testified that he saw Mattingly again on January 15, 1959 in the Federal Narcotics Bureau where he had gone to pick up his clothes. He said that his wife told him that Mattingly took the clothes on November 12, 1958. The defendant testified that on the date he picked up his clothes he offered to pay the $350.00 back to Mattingly but that Mattingly told him he didn't want the money back and he wanted the defendant to help him get three narcotic dealers. He also testified that Mattingly promised him the case against him would be dismissed if defendant cooperated with him. The defendant denied that he at any time intended to obtain narcotics for Mattingly and stated that he feared for his life if he was placed in the position of an informer. Defendant also denied either that he was in the Walgreen's Drug Store on 47th and South Park on Novem-

371

ber 12, 1958, or that he saw Mattingly or "Stainless Steel" at any other place on that date except in his home.

Mrs. Webb, defendant's wife, testified and substantially corroborated her husband's testimony. She also stated that after Mattingly left their home on the morning of November 13 he again returned at about 10:00 a. m. with about four other police officers and stayed until around noon. She stated that she had an altercation with Mattingly and he treated her in an abusive manner. According to Mrs. Webb, Mattingly took all of her husband's clothes, and said that he was going to take the clothes until he got the money, her husband, or the narcotics.

At the close of Mrs. Webb's testimony a stipulation to the effect that the defendant had pleaded guilty to an armed robbery charge in 1952 and was found guilty was admitted without objection.

The State's evidence tends to show that Mattingly paid the defendant $90 and received one-half ounce of heroin therefor on November 12, 1958, and on November 18, 1958 he gave the defendant $350 in defendant's home to purchase an "ounce of pure." The defense evidence is to the effect that on November 12, 1958 Mattingly, together with others, came to the defendant's home and Mattingly then gave the defendant $350 to get an "ounce of pure"; that he did not deliver the narcotics to Mattingly and that there was neither a transaction involving the $90.00 allegedly paid to the defendant, nor was there a delivery of narcotics by him.

In support of the contention that the defendant was not proven guilty of unlawful possession of narcotics beyond a reasonable doubt, the defendant in effect charged that the federal agents, Mattingly and Eckhardt, were both perjurers, and points to the fact that the informer "Stainless Steel" failed to testify. "Stain-

less Steel's" absence was explained by both Mattingly and Eckhardt.

■ The State is not obligated to call an informer as a witness and any adverse inference to be drawn therefrom is to be determined by the trier of the facts. People v. Lewis, 30 Ill2d 617, 198 NE2d 812; People v. McElroy, 30 Ill2d 286, 196 NE2d 651.

Furthermore, the testimony of the informer would merely have been cumulative.

■ He next contends that because Mattingly testified that on November 18, 1958, his visit to the defendant's home was for about three hours, and Eckhardt testified that while observing the house he waited outside for four or five hours without noticing any exit by Mattingly, a doubt was created as to the veracity of the witnesses. Minor discrepancies of this kind are matters for the trier of fact to determine and are not sufficient to disturb his findings. People v. Byrd, 21 Ill2d 114, 171 NE2d 782.

The defendant also relies upon Mattingly's appearance before the United States Commissioner in connection with the November 12 sale, upon a complaint which was dismissed. It cannot be said that the dismissal before the United States Commissioner created an estoppel. The record in this case is barren so far as it relates to the proceeding before the United States Commissioner. The defendant testified that he did not see the envelopes at the hearing before the Commissioner and Mattingly testified that he made no mention of the $350 which he had given to the defendant. The $350 transaction had no bearing on the offense allegedly committed on November 12, and there would be no reason for Mattingly to have mentioned it at the hearing before the Commissioner.

The fact that Mattingly, while testifying, could not recall whether the informer had initialed the envelope containing the narcotics, is of little or no consequence.

373

■ The defendant also points to the delayed arrest of the defendant as an element from which a reasonable doubt as to guilt could have been drawn. Mattingly testified that he purchased the drugs on November 12 after having given the defendant $90, and then again met with the defendant on November 18, at which time he sought to get additional drugs and paid the defendant $350. The question of a delayed arrest of a narcotics seller was discussed in the case of People v. Cole, 29 Ill2d 501, 504–505, 194 NE2d 269, 271:

> "When no arrest was made for the transaction on July 20, this being a common practice of the police in order to locate the seller's source of supply, the next sale between Cook and defendant was made with less stealth on September 26, defendant making direct delivery to Cook whom he apparently trusted on the second occasion. These prior transactions explain and lend credence to the otherwise unrealistic ease with which the Federal agent managed the controlled sale on October 10."

The reason for the delayed arrest, if the State's witnesses are to be believed, is apparent in this case. They were attempting to reach the source of supply of the defendant.

■ Concerning the admission of the result of the chemist's analysis, if, as in this case, the narcotics container is by evidence traced from the defendant to the laboratory, where it is delivered in a sealed envelope, and a chemist receives the same envelope in the same sealed condition from a receptacle in the laboratory, both the narcotics container and the results of the chemist's analysis are admissible. People v. Anthony, 28 Ill2d 65, 190 NE2d 837. Furthermore, the exhibits in this case were admitted without objection.

■■ We have examined carefully the alleged discrepancies relied upon by defendant and find that they are of a minor nature and not such as would create a reasonable doubt of guilt. The courts have repeatedly held that the testimony of one credible witness is sufficient for the trier of the fact to conclude that the defendant had been proven guilty beyond a reasonable doubt. (People v. Anthony, 28 Ill2d 65, 190 NE2d 837; People v. Guido, 25 Ill2d 204, 184 NE2d 858.) The trial judge in this case so found, and we are not impelled by anything set forth in the briefs to upset said finding.

■ The defendant's second point urges that John D. Endriz, a chemist, should not have been permitted to testify since his name was not included in the list of witnesses served upon defendant's attorney. The name of John D. Endriz did not appear on the list of witnesses. At the time Endriz was called as a witness by the State the defendant objected to his testifying, which objection was overruled by the court. The court, however, told counsel for the defendant that he had a right to examine him in private if he wished to do so. The defendant's attorney then said, "Just briefly. I hate to delay the court to this extent, your Honor." The court then said it would take a five minute recess and that defendant's counsel could discuss anything with the witness. The defendant's counsel did not ask at that time for a continuance. Subsequently, however, before the proofs were finally closed, a three week continuance was granted on defendant's motion. During this period he had more than adequate time to interrogate this witness.

In People v. Poland, 22 Ill2d 175, 184, 174 NE2d 804, 808–809, a similar question arose and the court said the following:

"The defendant did not ask for a continuance, nor did he do anything else to show that he was taken

by surprise or prejudiced by failure to receive the names earlier, and proceeded with the trial. We have held that it is within the discretion of the trial court to allow witnesses to testify whose names are not endorsed on the back of the indictment or included in the list of witnesses furnished by the People, and the exercise of that discretion will not be reviewed unless it appears that the defendant has been taken by surprise, and the burden of showing this is upon the defendant. (People v. Weisberg, 396 Ill 412.)"

Under the circumstances in this case, we cannot say that the trial judge abused his discretion.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.