THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN VASSAR, Defendant-Appellant.

First District (1st Division)    No. 77-1224

Opinion filed July 10, 1978.—Rehearing denied August 9, 1978.

Thomas P. Cernek, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Iris E. Sholder, and Mary Ellen Cagney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

On April 29, 1974, the defendant, while holding a glass in his hand, hit the complainant in the face causing the glass to break and severely cutting the complainant's face. The defendant was subsequently indicted for two counts of aggravated battery. Count I charged defendant with aggravated battery and count II charged him with battery aggravated by the use of a deadly weapon. (Ill. Rev. Stat. 1973, ch. 38, pars. 12—4(a) and 12—4(b)(1).) During a bench trial and at the close of the State's case, the trial court granted a directed verdict as to count II. At the close of all the evidence the trial court found the defendant guilty of the lesser-included offense of reckless conduct and sentenced defendant to two years probation and eight weekends on the periodic imprisonment program at the House of Correction. The trial court also fined defendant $500 and ordered him to pay $481 for restitution.

Defendant now appeals from this judgment of conviction and contends that he was not proved guilty beyond a reasonable doubt.

We affirm.

The testimony presented at trial indicates that on April 29, 1974, the complainant, Ralph Tite, a friend of Tite's, Jim O'Neill, and the defendant agreed to meet for a few cocktails at the Touch of Italy Restaurant located at 171 West Madison Street in Chicago. Tite and the defendant were both stockbrokers and worked in the same brokerage firm. Jim O'Neill had previously worked there. The defendant and O'Neill left together for the restaurant at approximately 3:30 p.m. Tite joined them at approximately 4:30 p.m.

According to Tite's testimony, at about 8:15 p.m., the defendant indicated that he was leaving for the evening and exited the bar area. However, at about 8:30 p.m., the defendant rejoined Tite and O'Neill, poured a bottle of beer into a glass, drank the beer from the glass, and then came down with the glass hitting Tite on the side of the face. The defendant hit Tite with his fist and the glass. The force of the blow broke the glass and knocked Tite to the floor. While lying on the floor, Tite saw the defendant hurriedly leave the bar. Tite also testified that at the time of the incident O'Neill was looking away from Tite and the defendant. Tite also testified that there was no animosity between himself and the defendant and that they had not argued that evening.

The blow and shattering glass cut Tite over the right eye, severed both nostrils and split his lower lip. After the incident, Tite was taken to Henrotin Hospital where plastic surgery was performed and Tite was given 800 to 1000 sutures. Tite indicated that he still has scars on his face which require further plastic surgery.

On cross-examination, Tite testified that he had a conversation with the police concerning the incident. Tite also testified that he could not recall telling the police how much alcohol he had to drink or whether he and the defendant had argued immediately prior to the incident. The police officers who interviewed Tite did not testify at trial. However, the parties stipulated that Tite had told one of the officers that he had been in the lounge for two hours and had drunk about three beers. It was further stipulated that the investigative report indicated that Tite and the defendant had an argument while they were drinking together.

It was also established at trial that although Tite was no bigger physically than the defendant, Tite was a former professional football player.

Also called as a witness by the prosecution was Jim O'Neill who testified that at a little after 7 p.m. the defendant left the bar, that he returned 15 to 20 minutes later, drank the remaining beer in his glass, and then struck Tite in the face with the glass causing Tite to fall off his stool

onto the floor. The defendant then picked up a stool and moved toward Tite. O'Neill then grabbed the defendant from behind and spun him around. At the time of the incident, O'Neill was talking to the bartender or someone on the other side of the bar, but saw the defendant's movement out of the corner of his eye. O'Neill also testified that during the entire time he, Tite and the defendant were in the bar, he never saw or heard any prior argument between the defendant and the victim, nor did O'Neill believe Tite was drunk. O'Neill also testified that Tite had been ejected from bars on numerous occasions.

The next witness called by the prosecution was Donald Weingartner, the bartender on duty at the time of the incident. Mr. Weingartner testified that at about 8:30 p.m. he was on the phone with his back to the people at the bar; that he heard a commotion, turned around and saw Tite fall. The defendant picked up a bar stool and moved toward Tite. At this point, O'Neill pushed the defendant away. Mr. Weingartner saw blood on the defendant's shirt, but did not notice whether his shirt was torn. The bartender further testified that he could hear the defendant and the victim speaking and, although he could not understand what they were saying, he observed no anger in their conversation. In Mr. Weingartner's opinion, Tite appeared "normal" and not "drunk."

The defendant testified that at about 4 p.m. the date of the occurrence, he, Jim O'Neill and Tite met for cocktails in the Touch of Italy Restaurant. At 4:30 p.m. the defendant left the bar for about 30 minutes and went to his bank. Upon his return, the defendant, O'Neill and Tite were conversing and each was buying rounds of drinks. At about 8 p.m. O'Neill and the bartender were engaged in one conversation and the defendant and Tite in another. Neither group was paying attention to the conversation of the other. The defendant left for the men's room, returned at about 8:15 and continued his conversation with Tite. Tite questioned the defendant as to why he was not invited to the defendant's poker parties. The defendant responded that his reason for not doing so was Tite's unpleasant disposition when drinking. After the defendant and Tite further discussed business differences they had at the office, Tite threatened to strike the defendant. The defendant was drinking his glass of beer with his left hand upraised and Tite grabbed at defendant's shirt front, tearing the pocket. At this point in the defendant's testimony, a shirt with a torn pocket was received into evidence. Defendant testified that the shirt was the same shirt he wore the evening of the incident. The defendant went on to testify that when Tite grabbed his shirt he swung his hand in a downward motion hitting Tite in the face with a beer glass. Tite fell to the floor and appellant picked up a bar stool and held it between himself and Tite.

■■■ The defendant's only contention in this appeal is that he was not

proved guilty beyond a reasonable doubt of the offense of reckless conduct. The provision in the Criminal Code which defines reckless conduct provides:

"A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs recklessly the acts which cause the harm or endanger safety, whether they otherwise are lawful or unlawful." (Ill. Rev. Stat. 1977, ch. 38, par. 12—5(a).)

Reckless conduct is a lesser included offense of aggravated battery. (*People v. Thomas* (1971), 1 Ill. App. 3d 139, 275 N.E.2d 253.) However, the only intent necessary to support a verdict of reckless conduct is that the act be done recklessly. (*People v. Norris* (1969), 118 Ill. App. 2d 406, 254 N.E.2d 304.) Section 4—6 of the Criminal Code of 1961 provides in relevant part:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. * * *" (Ill. Rev. Stat. 1977, ch. 38, par. 4—6.)

The testimony of the State's witness, if believed, denotes that the defendant, for no apparent reason, struck the complainant in the face with his fist and a glass. Clearly, such conduct is sufficient to support a judgment of conviction of reckless conduct.

Defendant, however, argues that this case turns on the credibility of the complaining witness and the defendant. Defendant challenges Tite's credibility and cites the fact that although Tite gave a statement to the police that he had been in the lounge two hours and had drunk three beers prior to the occurrence, the evidence showed he had drunk 3 or 4 martinis and had been in the lounge 4½ hours. Defendant also cites the fact that Tite had been ejected from King Arthur's Pub many times; Tite's physical prowess in that he had played both college and professional football; defendant's torn shirt received into evidence and his own testimony that Tite was argumentative and the aggressor that evening.

After reviewing all the testimony presented at trial, we find no reasonable doubt of the defendant's guilt. The trier of fact is the judge of the credibility of witnesses (*People v. Crouch* (1966), 77 Ill. App. 2d 304, 222 N.E.2d 44) and the testimony of one credible witness is sufficient for the trier of fact to conclude that defendant had been proved guilty beyond a reasonable doubt. (*People v. Webb* (1965), 60 Ill. App. 2d 365, 208 N.E.2d 639.) This is true even when such testimony is contradicted by the accused. (*People v. Jones* (1976), 42 Ill. App. 3d 353, 356 N.E.2d 114.)

Furthermore, minor discrepancies in the testimony of an eyewitness do not destroy his credibility or raise a reasonable doubt of defendant's guilt. Such discrepancies merely go to the weight to be given to his testimony. *People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214.

After reviewing Tite's testimony, we conclude that such testimony was credible and that the inconsistencies defendant argues exist therein are of a minor nature. We further note that both O'Neill and the bartender corroborated Tite's testimony that he and the defendant had not been arguing and that Tite was not drunk. Moreover, both O'Neill and the bartender testified that they did not see Tite grab the defendant's shirt.

We agree with the defendant that this case turns on the credibility of the complaining witness and the defendant. In entering judgment against the defendant the trial court chose to believe the complaining witness. His testimony was credible, corroborated by that of other witnesses, and sufficient for conviction. We find no reasonable doubt of defendant's guilt.

Defendant also argues that the trial court erred in ordering defendant to pay $481 for restitution. Defendant relies on *Holcomb v. Hornback* (1964), 51 Ill. App. 2d 84, 200 N.E.2d 745, a civil case involving the Dramshop Act. *Holcomb* has no relevance to the instant case. It is well settled that the trial court may, as a condition of probation, order a defendant to make restitution. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3(b)(10); *People v. McCue* (1977), 48 Ill. App. 3d 41, 362 N.E.2d 760.) The trial court did not err in ordering the defendant to pay $481 for restitution.

For the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

GOLDBERG, P. J., and BUCKLEY, J., concur.