THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOYCE RODRIGUEZ, Defendant-Appellant.

First District (1st Division)   No. 79-1717

Opinion filed October 27, 1980.

Edward R. Vrdolyak, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Wesley H. H. Ching, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Joyce Rodriguez (defendant) was acquitted of attempted murder and convicted on four counts of aggravated battery and one count of reckless conduct. Defendant was sentenced to one to three years on the aggravated battery counts. She appeals.

Gilbert Velez testified that on October 19, 1974, he and David Aragon left a tavern at approximately 2 a.m. and stood by the side door on the sidewalk. They were joined by Fidel Perez, Edward Jaimes, Jessie Fernandez, and Mark Rodriguez. Velez saw a car pass, heard a "big boom," saw sparks and flames, and heard someone say, "They are shooting." He had started running when two or three pellets hit him, and he fell to the ground. He then saw flames coming from the car and saw a man, identified as co-defendant Louis Limas, firing a handgun from the front, passenger's seat.

Edward Jaimes testified he saw a white Buick traveling westbound on 16th Street. He "saw a girl driving." He saw the car later, heard loud noises, and saw flashes coming from it.

Mark Rodriguez testified he was writing on a wall 2 or 3 feet away from the side door of the tavern when a white Buick drove by. He heard big booms and shots and was hit in the leg. Rodriguez fell to the ground. When he looked up, he saw the car turn and stop. He saw Louis Limas in the front seat firing shots from a revolver. He had known Limas for two

years. He saw Arthur Moya in the rear seat. He stated the area "was well lit up. They have new lights out there." After the shooting, he saw Dennis Gatch and Joe Calderon in a Cadillac pursue the white Buick.

Fidel Perez testified he was standing near the side door of the tavern when a white Buick with a girl inside drove by. He stated, "I saw the driver. The driver was a girl, but I didn't get a real good look at her, but she had dark hair. The car seemed to be going slow." He felt as though he was losing his balance. He heard loud booms, saw flames coming from a car, and felt some shots.

Dennis Gatch testified he parked his 1968 Cadillac by the side door of the tavern. From across the street he saw a small, white car pass with "some people in it and as they went by I [saw] one person like sleeping with a coat over [his] head and the other person in the back like this [with his right hand over the right side of his face]." He later returned to his friends near the tavern. He and Joe Calderon got in his car to go home. He saw the same car with "something come out of the back window." He said, "There they are," heard shots, and ducked down. When he got up, he saw the car going east on 16th Street and followed it. He alerted a squad car, but continued to follow the white car. He said he never lost sight of that car during the chase until he encountered a roadblock. He then stopped, but the white car continued through the obstacle. He later went to the police station and saw defendant there.

Arthur Barrios testified he pulled alongside Gatch's Cadillac at the side of the tavern. Barrios was facing south in the northbound lane. He saw a car driving north and attempted to pull out of the way, but the car drove in the southbound lane to get around him. He stated, "[T]his girl was just driving it by herself and I was looking at her because, you know, I thought I knew her or something." He said new lights had just been installed, so it was "real bright." He looked at her "for about maybe ten seconds or fifteen seconds while the car was going by." Barrios pulled into the alley and "felt some pellets or something hit" his car. He heard loud noises and saw his friends falling. He saw "gunshots coming from * * * that white car that just passed." At approximately 6:40 a.m. in a police lineup, Barrios identified defendant as the driver. At trial he viewed a photograph of the lineup and pointed out defendant. He also identified defendant as the driver in court.

Joseph Calderon testified he and Gatch went to Gatch's car. He saw a white car coming up Fairfield and pass them. He saw "two men raise up in the car." The man in the back had a shotgun and he fired it. He had known this man for "a couple of years." In the front seat Limas started shooting. He had known Limas "for quite some time." The car "was moving real slow." He saw the driver was a "girl" who wore glasses and a short fur coat and had black hair. He had seen her once or twice before.

He identified defendant as the driver. He and Gatch pursued the car. He testified defendant still had this same coat on at the police station.

Jessie Fernandez saw a white car traveling north with "a lady driving." He identified defendant as the driver. He identified Limas as a passenger who held a pistol. He had known Limas for a year. The man in back had a shotgun. The witness stated, "Then the shot came off. I was struck."

Officer Lawrence Soltysiak testified he saw a white Buick and a Cadillac following it at high speed. He pursued the two cars and saw the Cadillac stop at a roadblock and the white Buick squeeze through. Soltysiak stopped his car and saw other police cars pursue the white Buick. In the area he found a revolver on the sidewalk. He later arrived where the white car had been stopped and his partner was assigned to search the apprehended female whom he identified in court as defendant.

Officer Roy Hull testified he pursued the white car and when it stopped, "two people exited." He identified defendant as the driver. After a search, he found expended shotgun shells in the back seat.

I.

Defendant first contends the State failed to prove her guilt beyond a reasonable doubt. Defendant urges the testimony of identification witnesses was doubtful.

An identification by even one credible witness who had a good opportunity to view defendant under circumstances which would permit a positive identification is sufficient to sustain a verdict of guilty. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Yarbrough* (1977), 67 Ill. 2d 222, 226, 367 N.E.2d 666.

■■ In the case before us, three credible witnesses positively identified defendant as the driver of the car. Joseph Calderon saw defendant once or twice before and identified her as wearing a short fur coat and glasses and having black hair. Arthur Barrios saw defendant for 10 or 15 seconds. He also picked her out of a lineup a few hours after the shooting. Mark Rodriguez and Arthur Barrios testified the lighting conditions in the area were good. In addition, the car was in continual observation from before the time of the shooting until the termination of its flight. Dennis Gatch testified he followed the car despite police intervention. When the car finally stopped, Officer Hull ordered the driver out of the car and identified her as the defendant. The identification testimony here, considered in view of the legal principles above cited, is strong beyond reasonable doubt.

Furthermore, although defendant did not herself fire any shots but simply drove the car, she was properly convicted on a theory of

accountability. Section 5—2 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 5—2) provides:

> "A person is legally accountable for the conduct of another when:
>
>           * * *
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

■■ Mere presence or negative acquiescence is insufficient to establish accountability (*People v. Jenkins* (1980), 88 Ill. App. 3d 160, 410 N.E.2d 418), but as the court stated in *People v. Morgan* (1977), 67 Ill. 2d 1, 8-9, 364 N.E.2d 56, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411 (quoting *People v. Morgan* (1976), 39 Ill. App. 3d 588, 597-98, 350 N.E.2d 27):

> "[A] person may aid or abet without actively participating in the overt act and if the proof shows that he was present at the commission of the crime without disapproving or opposing it, the trier of fact may consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval, and was thereby aiding and abetting it."

(See *People v. Hubbard* (1973), 55 Ill. 2d 142, 147-48, 302 N.E.2d 609; *People v. Martinez* (1980), 84 Ill. App. 3d 79, 80, 405 N.E.2d 405.) We conclude there is ample evidence from which a jury could reasonably conclude defendant intended to promote and facilitate the shooting by willingly driving the car and thus enabling the passenger to shoot freely at the people on the sidewalk.

In our opinion, the evidence of guilt of this defendant of aggravated battery upon the theory of accountability is strong beyond reasonable doubt to an overwhelming extent.

## II.

Defendant contends the jury was improperly influenced by the clerk of the court, and the trial judge did not properly instruct the jury to correct the clerk's error. After verdict, when the trial judge requested the clerk to poll the jurors, the clerk stated, "I am going to ask you the question 'Is this your verdict and was this your verdict?' and you will answer 'yes.'" When defendant's attorney objected, the trial court judge stated, "The clerk will ask each specific juror 'Was this and is this now your verdict?'" The clerk asked each juror that question, and each juror answered affirmatively.

■■ It is true that "a verdict cannot stand if the interrogation [of the juror]

precludes the opportunity to dissent or if the record reflects that the juror in the poll has not in fact assented to the verdict." (*People v. Kellogg* (1979), 77 Ill. 2d 524, 529, 397 N.E.2d 835.) But such is not the situation here. The trial judge adequately corrected the language used by the clerk so as to permit any juror to express dissent. The trial judge stated the clerk will ask, "Was this and is this now your verdict?" The supreme court has approved of those words in *People v. Kellogg* (1979), 77 Ill. 2d 524, 528. We find them appropriate here. We find no reversible error in this regard.

### III.

Defendant contends the State's final remarks during closing argument played on the fears of the jury. The prosecutor stated:

"The question comes down to do you want your community to be the type of situation where gang style shootings, street shootings, are going to be permitted? Where men are standing on street corners, and I don't care it if is 1:00 in the afternoon or 2:00 in the morning, where people have to be in fear of being severely and critically shot?"

■■ Defendant failed to object to this remark and thereby failed to bring the issue to the attention of the trial court. "Under these circumstances, the defendant has waived any possible error, and [this issue is] not properly before this court." *People v. Beto* (1980), 86 Ill. App. 3d 622, 629, 408 N.E.2d 293; *People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

In any event, "[t]he propriety of remarks during closing argument is generally left to the discretion of the trial court." (*People v. Madden* (1978), 57 Ill. App. 3d 107, 114, 372 N.E.2d 851.) "[A]rguments and statements based on the proof or legitimate inferences deductible therefrom do not transcend the bounds of legitimate argument," and "it is entirely proper for the prosecutor to dwell upon the evils of crime and to urge the fearless administration of the law." (*People v. Hairston* (1970), 46 Ill. 2d 348, 375, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972; 29 L. Ed. 2d 136, 91 S. Ct. 1658.) The prosecutor is also permitted to dwell upon the results of a crime and to comment upon its effect on the community. *People v. Johnson* (1979), 73 Ill. App. 3d 431, 435, 392 N.E.2d 587; *Madden*, 57 Ill. App. 3d 107, 114.

■■ In this regard, we find the prosecutor's reference to gang-style shootings in the community and a citizen's fears resulting therefrom to be within the bounds of proper argument. We also note Mark Rodriguez, Jessie Fernandez, and Joseph Calderon testified they were all members of the Satan Disciples at the time of the shooting. In addition, defendant's trial attorney in his closing argument mentioned "the testimony of the

Satan Disciples and their friends" and intimated the gang congregated at that corner at 2:30 a.m. and "chased" defendant on that evening.

## IV.

The jury found defendant guilty on four counts of aggravated battery and one count of reckless conduct. Aggravated battery is a Class 3 felony (Ill. Rev. Stat. 1979, ch. 38, par. 12—4), and reckless conduct is a Class A misdemeanor (par. 12—5). Defendant contends she should be sentenced only on the lesser charge of reckless conduct.

■■ "Reckless conduct is a lesser included offense of aggravated battery." (*People v. Vassar* (1978), 62 Ill. App. 3d 523, 526, 379 N.E.2d 94, *appeal denied* (1978), 71 Ill. 2d 620.) Both offenses arose from the identical acts. Therefore, we hereby vacate the judgment as to the lesser offense of reckless conduct and affirm the judgments and sentence on the aggravated battery charges. Compare *People v. Thomas* (1977), 67 Ill. 2d 388, 367 N.E.2d 1281 and *People v. King* (1977), 66 Ill. 2d 551, 566, with *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.

Judgment as to reckless conduct vacated; judgment and sentence as to aggravated battery charges affirmed.

O'CONNOR and CAMPBELL, JJ., concur.·