THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ADRIAN HENNON, Defendant-Appellant.

First District (1st Division)   No. 1—89—3339

Opinion filed March 16, 1992.—Rehearing denied May 29, 1992.

Northwestern University Legal Clinic, of Chicago (Thomas F. Geraghty, Robert P. Burns, and Kelly Deere, of counsel), for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Carol L. Gaines, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Following a jury trial, defendant Adrian Hennon was convicted, based on accountability, for first degree murder, attempted murder, and armed violence (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1, 8—4, 33A—2, 5—1), in the shooting of two individuals. The trial judge sentenced defendant to concurrent prison terms of 40 years for murder and 20 years each for attempted murder and armed violence.

We affirm.

Defendant's convictions arose from events of September 9, 1988, when gunshots, fired from a passing automobile, killed Abdullah Asad and wounded Jason Murray, who were then standing in a park at 87th and Jeffery Streets, near Chicago Vocational High School, in Chicago. Defendant was identified as the owner and driver of the automobile, a Chevrolet Nova.

Other facts related to the contentions raised by defendant on appeal are summarized in the context of the consideration of those matters below.

I

Defendant contends that he was not proved guilty beyond a reasonable doubt because the evidence did not establish that he was the driver of the Nova or show that he possessed the requisite intent to support his convictions on the basis of accountability (see Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c)). Defendant points to his own testimony that he was merely a passenger in the front seat of the Nova and was unaware of the existence of a gun in the car or the shooter's intent. He also relies on the admission of a statement given to police by Richard Terrell in which Terrell stated that he, not defendant, had been the driver of the Nova.

At trial, four witnesses identified defendant as the driver of the Nova at the time the gunshots were fired.

Elward Verrett testified that, minutes before the shooting, he saw Jason Murray exchange words with occupants of a passing

jeep. Apparently, the jeep had nearly struck Murray as he walked to the park where Verrett and others were present. The jeep's occupants threatened to return. When the jeep did shortly return, it was followed by the Nova. The vehicles stopped and the occupants, six or seven individuals, displayed a particular street gang hand signal as they approached Verrett and the others. Defendant and Terrence Mack were among the group. An argument ensued and, at some point, Verrett heard Mack say, "Shoot him. Shoot him." Nevertheless, defendant, Mack, and the individuals with them returned to their vehicles and left.

The Nova returned shortly thereafter with defendant driving and Mack in the front passenger seat. As the Nova approached, Verrett stated, it slowed to 10 to 15 miles per hour. Mack reached out of the Nova's window with a pistol in his hand and started shooting. Eight shots were fired.

Esau Asad, the older brother of Abdullah Asad, corroborated Verrett's testimony. Darren Harris also saw defendant driving the Nova while Mack fired gunshots from the front passenger seat.

Although Devon Miller also testified to the same facts at trial, he admitted he had initially told defense investigators that the gunshots had been fired from the Nova's back seat and that he could not remember whether defendant was the driver.

Robert King, who testified on defendant's behalf, also heard the gunshots but did not see where they were being fired from. King did state he saw the Nova immediately after the shots were fired and saw that defendant was the driver.

It was defendant's testimony that Richard Terrell had driven the Nova at the time of the shooting. Defendant stated he and Terrell had met earlier that day and that Terrell had asked defendant for a ride to a motel to meet Terrence Mack. Terrell asked, and defendant agreed, to let Terrell drive to the motel. Mack eventually joined them. Later, while on the way to a gas station, and with Terrell still driving, they encountered Mark Watts, Terrence Jobe, and Haroon Binwalee in the jeep. They asked defendant, Mack, and Terrell to follow them to Chicago Vocational High School. There, Watts, Jobe, Binwalee, and Mack exited the vehicles. Terrell and defendant, who was in the front passenger seat, stayed in the Nova. When the four individuals returned, Mack got into the jeep, and Jobe got into the back seat of the Nova.

After getting gas, Jobe asked to be driven to get something to eat. Defendant stated that as Terrell drove east past a crowd, Jobe started shooting. Defendant was unaware Jobe had a gun. Shortly

thereafter, they saw the jeep again. Jobe got out of the Nova and got into the jeep.

Defendant stated he then told Terrell that he wanted to drive. Mack joined them. After being seen by the police, however, Terrell and Mack got out of the car.

Soon after, defendant was arrested.

Defendant's testimony that he was not driving the Nova at the time the shots were fired was corroborated by the testimony of Mark Watts and the statement Terrell had made to police, which was read to the jury.

Defendant argues that the identification of him as the driver when the gunshots were fired was flawed because only a limited opportunity existed to view the Nova as it passed the park. Defendant also points out that, although he had been identified out of a police lineup, none of those who then identified him specifically stated he had been the driver. Defendant also draws attention to Watt's testimony and Terrell's admission establishing that Terrell, not defendant, drove the Nova at that time.

■ Defendant's arguments rest, ultimately, on the credibility accorded the various witnesses' testimony, the weight assigned that testimony, and the inferences drawn by the jury as the trier of fact. We may not properly consider those determinations here. (See *People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402, *cert. denied* (1985), 474 U.S. 908, 88 L. Ed. 2d 241, 106 S. Ct. 276; *People v. Bradford* (1985), 106 Ill. 2d 492, 478 N.E.2d 1341.) The standard we must apply is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) In that regard, an individual is legally accountable for the conduct of another when he solicits, aids, abets or agrees or attempts to aid another in the planning or commission of an offense with the intent to promote or to facilitate its commission. Ill. Rev. Stat. 1987, ch. 38, par. 5—1; *People v. Taylor* (1991), 219 Ill. App. 3d 47, 579 N.E.2d 383.

■ Here, testimony established that defendant was with the group of individuals who displayed gang hand signs during the altercation in the park after Murray exchanged words with the occupants of the jeep. At that time, Verrett heard Mack direct someone to shoot. Witnesses identified defendant as the driver of the Nova when the Nova subsequently returned before the shooting incident. Specifically regarding defendant's facilitation of the shooting, there was testimony that defendant actually slowed the Nova as it passed

immediately before the gunshots were fired. That testimony, viewed in a light most favorable to the State, sufficiently establishes the elements of accountability to sustain defendant's convictions. See *People v. Rodriguez* (1980), 89 Ill. App. 3d 941, 412 N.E.2d 655.

## II

Defendant complains the State deprived him of a fair trial by making numerous improper remarks during closing and rebuttal arguments to the jury. Defendant contends the State misstated the law of accountability, indicating a lesser requisite burden of proof. Defendant points to references to accountability as a crime recognizing "teamwork" and "power[ ] in numbers." Defendant refers to the State's attempt to illustrate the offense of accountability within the context of an armed robbery undertaken by two individuals where one "never gets out of the car." Defendant also complains the State improperly implied that the use of defendant's car, alone, would be sufficient to find defendant guilty.

■■ The above contentions do not provide cause to disturb defendant's conviction. Even accepting that the statements concerning accountability might constitute misstatements of the law, defendant's arguments are of little consequence here because the trial judge admonished the jury that he would instruct them on the law and properly did so. (*People v. Lawler* (1991), 142 Ill. 2d 548, 568 N.E.2d 895.) Further, because the gunshots were fired from defendant's car, the statement concerning the use of defendant's car as being instrumental in Asad's death was essentially correct. See *People v. Willis* (1983), 119 Ill. App. 3d 34, 456 N.E.2d 165.

■■ Defendant also argues the State improperly remarked that "passengers in these drive-by murders get convicted all the time."

Regarding this particular comment, we note that defendant's counsel's objection was sustained. Immediately thereafter, the State clarified the statement to indicate merely that a passenger could be found to be as accountable as the driver. Given that the above comment was made during rebuttal argument and the prompt rephrasing of the comment, we cannot conclude defendant was prejudiced. See *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.

We find no merit in addressing other comments complained of by defendant as improperly inflaming juror passions or implying a fabricated defense because, after reviewing each of those comments in light of the evidence presented, the comments simply provide no reason to disturb defendant's convictions. See *Bryant*, 94 Ill. 2d 514, 447 N.E.2d 301.

## III

Defendant next argues the State denied him a fair trial because he was persistently questioned on cross-examination regarding matters to which objections had been sustained. Defendant complains the State sought to establish in the jury's mind that defendant's counsel was obstructing the judicial process. Specifically, the examination involved defendant's knowledge of gang activity, his relationship with Mack, talk inside the Nova, and questions implying defendant attempted to flee from the police.

■ Although the State may not properly repeat questions to which objections have been sustained in order to portray the defense effort as an attempt to keep damaging evidence from the jury's consideration (see, *e.g., People v. Weinger* (1981), 101 Ill. App. 3d 857, 428 N.E.2d 924), we cannot say the State's questioning here rose to that level or otherwise prejudiced defendant. In each case, the line of questioning had some basis in the evidence. For example, the evidence indicated the incident had some basis in gang activity. Gang hand signs were exhibited during the initial altercation in the park before the shooting.

## IV

Defendant complains that the trial judge refused to instruct the jury on the offense of involuntary manslaughter, arguing that the evidence at trial showed that the shooter acted without the requisite intent or knowledge to support a murder conviction. Other than Terrell's statement, defendant argues, the State presented no evidence as to conversations inside the Nova to support the requisite intent to commit murder. Further, defendant asserts, Terrell's statement established only that Mack told Terrell to head the car toward the park because Mack "wanted to straighten [the individuals in the park] out" and that he wanted "to pop over at them and scare them." Those facts, defendant argues, indicate Mack possessed only a reckless state of mind and, because he was charged with accountability, defendant contends he was entitled to the instruction.

■ Generally, an involuntary manslaughter instruction is not warranted where a defendant voluntarily and willfully commits an act which has a natural tendency to cause death or great bodily harm. (*People v. Whitt* (1986), 140 Ill. App. 3d 42, 487 N.E.2d 1246; *People v. Cannon* (1971), 49 Ill. 2d 162, 273 N.E.2d 829.) Here, evidence established that Mack intentionally shot in the direc-

tion of the victims while sitting in the passenger seat of defendant's automobile as defendant slowed travel. In view of that evidence, it was not improper for the trial judge to refuse to instruct the jury regarding involuntary manslaughter. See *People v. Cannon* (1971), 49 Ill. 2d 162, 273 N.E.2d 829.

## V

During deliberations, the jury submitted a note to the trial judge asking whether the defendant was required to know what crime was to be committed in order to be held legally accountable. The trial judge responded by directing the jury that it "should read and discuss the instructions in order to resolve the inquiry."

■ Defendant now complains that the trial judge erred by not specifically, and affirmatively, answering the jury's inquiry.

A trial judge may properly exercise his discretion and decline to answer the jury's inquiry where the given jury instructions are readily understandable and sufficiently explain the relevant law. *People v. Wade* (1988), 167 Ill. App. 3d 921, 522 N.E.2d 285.

The trial judge instructed the jury in the following manner regarding accountability:

> "A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense."

That instruction contained a clear explanation of the law of accountability. More importantly, the trial judge's particular response to the jury's inquiry was informative because it indicated the answer to that specific question could be found in the instruction itself. The instruction directs that defendant's accountability depended upon the shooter's conduct if, before or during the the shooting, defendant had the intent to promote or facilitate the commission of that offense. The trial judge simply had no reason to further explain the instructions.

## VI

Prior to trial, defendant successfully moved to sever his trial from that of codefendant Terrell. However, the trial judge denied defendant's request, pursuant to the same motion, to conduct defendant's trial prior to Terrell's trial. Defendant had intended to have Terrell testify in person that he, not defendant, was the driver

of the Nova, consistent with the statement Terrell had made to police. The trial judge ordered that the trials proceed in the order in which the defendants were named in the indictment. At defendant's trial, Terrell declined to testify, asserting his fifth amendment right against self-incrimination.

Defendant now complains he was prejudiced because his trial was held before Terrell's. Further, defendant contends the trial judge improperly refused to explain Terrell's unavailability and invocation of the fifth amendment right to the jury by way of an instruction.

■ Any argument that defendant was prejudiced because his trial preceded that of Terrell is, at best, speculative. There is no basis in the record to suggest that Terrell would have testified in defendant's trial if it had been held first. Even so, whether his testimony would have been consistent with the statement he gave to police is a matter of speculation. It is conceivable that, given Terrell's conviction in that trial, he might have elected to decline to testify in defendant's trial, preserving his fifth amendment right in the likelihood of winning retrial in a subsequent appeal. In any case, we note that, notwithstanding the speculative nature of defendant's argument, Terrell's statement was published, and considered, by the jury. Thus, we cannot conclude the trial judge's decision to order the trials as he did prejudiced defendant.

Further, although an instruction such as defendant sought to have the trial judge give is proper (*People v. Cvetich* (1979), 73 Ill. App. 3d 580, 391 N.E.2d 110), it is not mandatory. Most importantly, the absence of an instruction here did not deprive defendant of any constitutional right. Terrell's statement spoke for itself. In fact, by refusing to give an explanation for Terrell's failure to testify, there was no risk that the jury's decision could have been based upon speculation as to what Terrell's testimony would have been had he not invoked his fifth amendment right.

## VII

Prior to trial, defendant moved to suppress evidence relating to the identification of him from a lineup conducted the day of his arrest. During a hearing on the motion, the trial judge sustained numerous objections to questions asked by defendant's counsel, pertaining, generally, to the procedure used by police prior to and during the lineup as well as police contact with those who were to view the lineup.

Defendant contends the trial judge unduly restricted the scope of his counsel's examination during hearing on defendant's motion to suppress identification, thereby precluding defendant from establishing circumstances indicating suggestiveness.

■ We do not agree. Defendant's counsel was permitted to make the necessary inquiries of the individuals who observed the lineup. Specifically, the trial judge permitted counsel to ask Devon Miller whether he saw the individuals he later identified in the lineup while he was in the Fourth District police station prior to observing the lineup at the Area Two police station. The trial judge also permitted counsel to ask if Miller had spoken to police officers before the lineup, had observed any photographs, or had been told anything by police concerning who would be in the lineup. Miller answered all of those questions in the negative. Counsel was permitted to ask Elward Verrett, Jr., Anthony Gibson, and Esau Asad the same questions. Each also answered those questions in the negative.

Counsel was further permitted to ask Chicago police detective William Higgins whether, while at the police station, those viewing the lineup had seen the individuals who were later identified. He was permitted to ask Chicago police detective James P. Butler what he, Butler, told the witnesses who later viewed the lineup. The answers given by the detectives did not indicate any suggestiveness in the lineup procedure.

## IX

Defendant argues his sentence was improper because he had no prior history of delinquent acts or criminal offenses. Defendant also points to the testimony of witnesses on his behalf who established he had a peaceful nature, and, according to defendant, the lack of evidence showing he was the shooter. Defendant also notes Terrell received only a 22-year prison sentence after pleading guilty to the same offenses.

■ The record indicates that the trial judge was aware of and considered each of the circumstances now argued by defendant as justification for a decreased sentence. In addition, the 40-year sentence was within the range of punishment prescribed by statute (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1). Finally, we find no merit in defendant's argument regarding the disparity between his and Terrell's sentences. First, Terrell's sentence followed a guilty plea, not a trial. Even if that fact is ignored, defendant bore a burden to produce a record from which a rational comparison of sentences can

be made. (*People v. Kline* (1982), 92 Ill. 2d 490, 442 N.E.2d 154.) Here, the record contains no basis to determine what factors were used in imposing sentence on Terrell such as could provide a basis to examine any perceived disparity in the sentences imposed.

Affirmed.

BUCKLEY, P.J., and MANNING, J., concur.