THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADRIAN MITCHELL *et al.*, Defendants-Appellants.

First District (3rd Division) Nos. 1—89—1668, 1—89—1795 cons.

Opinion filed September 2, 1992.

Rita A. Fry, Public Defender, of Chicago (Mary C. Arundel, Assistant Public Defender, of counsel), for appellant Adrian Mitchell.

Michael J. Pelletier and Michael Katten, both of State Appellate Defender's Office, Mark W. Solock, and Barry A. Spector, all of Chicago, for appellant Rafael Mendez.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William Pistorius, and Joseph P. Roddy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Defendants Adrian Mitchell and Rafael Mendez were indicted and charged with murder, armed violence, attempted burglary, attempted armed robbery, attempted robbery and unlawful use of a firearm by a felon. Following a bench trial, defendants were convicted of murder, unlawful use of a firearm by a felon and armed violence. Each defendant received a sentence of 50 years' incarceration in the Illinois Department of Corrections. Defendants appeal both their convictions and sentences.

This case examines the 1988 shooting death of Theresa Demerin, who worked as a nurse at St. Mary's of Nazareth Hospital (the hospital) in the City of Chicago. On the evening of February 25, 1988, Theresa completed her shift at the hospital and then walked to her car, which was parked in the northwest section of hospital parking lot "B." When Theresa did not arrive home by 1 a.m. as usual, her husband, Deolido, alerted hospital personnel. Around 4:15 a.m. on February 26, 1988, hospital security guards found Theresa's lifeless body slumped over on the front seat of her red Escort.

Hospital security guard Alan Grelyek testified he was working the evening of February 25, 1988. While monitoring security cameras, Grelyek observed a black man with a "Jewel" shopping bag looking into a parked car in lot "B." Around 1:15 a.m. another security guard, Shanen Beltran, observed a similar man looking into a red Escort in parking lot "B." The following day Beltran identified the man as defendant Adrian Mitchell.

Another hospital employee, Caridad Quidayan, recounted how she left the hospital around 12:10 a.m. As she exited the northwest corner of parking lot "B" she heard something which sounded like rocks hitting the back and side doors of her van. The next day, she discovered four bullet holes in the doors of the van.

Jesse Boone was in a nearby apartment on the night in question with Otis Mitchell, defendant Adrian Mitchell's uncle, when he heard several gunshots between 11 p.m. and 12 midnight. He and Otis Mitchell later observed defendants Adrian Mitchell and Rafael Mendez sitting in a parked car in the vicinity of the hospital. Both defendants were talking and laughing. They told Boone "there is a dead lady in the park" and that if Boone and Otis Mitchell wanted "money or something" they could take it. Mendez then commented they would read about it in the morning paper.

The following day, Boone told Officer Kusinski about the conversation with Adrian Mitchell and "a white guy with glasses." Boone

then identified this other man as Rafael Mendez in a police photograph book. Boone also made in-court identifications of both defendants.

Prior to trial, Mendez motioned to quash his arrest and to suppress statements made while in police custody. Officer Paul Kusinski testified at the hearing on this motion that he was assigned to canvass the buildings surrounding the parking lot where the victim's body was found. Kusinski recovered several .22 caliber shell casings at the entrance to 2248 West Potomac. He later learned that Otis Mitchell told other officers that his nephew Adrian resided in a second-floor apartment of that building and that there might be a rifle in his apartment. After entering a rear unlocked door to the apartment, Kusinski discovered several more .22 caliber shell casings and a .22 rifle wrapped in a bed sheet. Kusinski also noticed that the apartment's windows faced southward in the direction of the parking lot where the victim was shot.

Later that day, Kusinski interviewed Jesse Boone about his conversation with Adrian Mitchell and a "light-skinned Puerto Rican" the previous night. After learning that Adrian Mitchell had been arrested a few days previously with Rafael Mendez, Kusinski presented Boone with a police photo book containing Mendez' photograph. Boone identified Mendez as the man he spoke with the previous evening, who had been laughing and talking with Adrian Mitchell. Kusinski then prepared two supplementary arrest reports, wherein he failed to mention the photographic identification of Mendez and the recent joint arrest of Mitchell and Mendez.

During the hearing, the trial court referred to this as "slipshod" police work, but believed that Kusinski had in fact performed a photographic identification of Mendez. The trial court also noted that the arresting officer had probable cause to arrest Mendez, since Mendez appeared apprehensive and responded "Oh, no" when the officer approached him about the "death of a nurse." The motions to quash the arrest and suppress this evidence were both denied. Defense counsel then orally motioned to suppress the photographic identification as being suggestively presented. This motion was also denied.

Defendant Adrian Mitchell motioned to suppress statements made to Assistant State's Attorney David Lavin. Mitchell testified that Lavin promised he would not be charged with murder but with "reckless something." Mitchell then gave a full statement to Lavin in the presence of a court reporter. When asked whether he had been promised any leniency for his statement, Mitchell responded he had not.

According to Mitchell, both he and Mendez were shooting a rifle from the window of his apartment. They aimed the rifle at people in the nearby hospital parking lot in order "to scare them." The defendants alternated shooting the rifle. Mitchell saw a woman enter the lot and approach a small red car. When she was about three feet from the car Mitchell shot toward the car. The woman then opened the car door and disappeared from view. Mitchell admitted he thought she was "probably dead." He and Mendez then attempted to search the woman's body for jewelry, but the car was locked. They later returned with a screw driver to pry open the car door but were prematurely stopped by hospital security guards.

Although this is a consolidated appeal, we will consider the issues raised by each defendant separately. First, defendant Mitchell contends that his pretrial motion to suppress his statement should have been granted. In support thereof, Mitchell claims he gave the statement only after Assistant State's Attorney Lavin promised to charge him with "reckless [homicide]" instead of murder.

After hearing the testimony of defendant Mitchell, Assistant State's Attorney Lavin and Detective Raymond Schalk, the trial court concluded that Mitchell's statement had been voluntarily given. The trial court's finding as to the voluntariness of a confession will not be reversed unless it is contrary to the manifest weight of the evidence. (*People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525.) The trial judge must decide whether the will of the defendant was overcome, given the totality of the circumstances. *People v. Baine* (1980), 82 Ill. App. 3d 604, 403 N.E.2d 57.

Detective Ray Schalk was present when Assistant State's Attorney Lavin interviewed Mitchell. According to Schalk, Mitchell stated that he understood his *Miranda* rights prior to discussing the death of Theresa Demerin. The discussion lasted 15 to 20 minutes. Several hours later, Schalk and Lavin met again with Mitchell, who repeated his confession in the presence of a court reporter. This discussion lasted about 10 minutes. Under oath, Mitchell stated he had not received any promises of leniency in exchange for his confession. After the written report was prepared, Mitchell read and initialled it.

■ The trial judge weighed the testimony and credibility of Schalk, Lavin and the defendant, in finding the confession was voluntary. The record indicates an absence of any evidence of physical or mental abuse or coercion. Under the totality of the circumstances, we cannot agree that the finding of the trial court was against the manifest weight of the evidence presented.

■ Mitchell also argues that his murder conviction should be reduced to involuntary manslaughter. However, Mitchell failed to raise this issue at trial or in his written post-trial motion. Therefore, this issue has been waived and we need not consider it on review. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

In any case, it is difficult to fathom how the calculated actions of the defendant in this case could be deemed mere recklessness. This is not a case of youthful indiscretion such as rock throwing at passing cars or even taking "pot-shots" with a "BB" gun. Defendant loaded and aimed a .22 caliber rifle toward the parked car of Theresa Demerin, when he could clearly see that Mrs. Demerin was a mere three feet from the car. Certainly, a 19-year-old young man knew that pulling the trigger created a "strong probability of death or great bodily harm" to Mrs. Demerin. (See Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(2) (for the definition of "murder" in Illinois).) Moreover, instead of shock and dismay as to the result of his "recklessness," defendant walked to the car where Mrs. Demerin lay lifeless, in the hope of finding jewelry or other valuables. Defendant would have us excuse as "reckless" actions which ended the life of Theresa Demerin, a 25-year-old registered nurse with a husband and a four-year-old son. Under the circumstances, we decline to do so.

■ Defendant next contends that his prior felony convictions were improperly introduced to show his propensity to commit crime. Mitchell was charged with the unlawful use of a firearm by a felon. In Illinois, it is unlawful for a person to knowingly possess a firearm if he has been convicted of a felony under the law of Illinois or any other jurisdiction. (Ill. Rev. Stat. 1989, ch. 38, par. 24—1:1(a).) We find that defendant's prior convictions were properly admitted to prove that he was a convicted felon at the time he possessed a firearm.

Finally, Mitchell requests that we reduce his sentence of 50 years' imprisonment for murder, given his rehabilitative potential and genuine remorse for the crime. We cannot disturb the sentence of the trial court absent an abuse of discretion. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 508 N.E.2d 708.) On review, the proper question is not what we think the sentence should have been, but whether the trial court properly weighed the relevant factors and rendered a decision which was within the statutory limits for the crime committed.

■ In arguing for an extended term of natural life imprisonment, the State presented the juvenile record, including two prior robbery convictions, of Mitchell. The State further alluded to the heinousness

of the crime, describing it as a cold-blooded "thrill kill" without any motive.

In mitigation, Charles Rankin, a teacher at the Cook County jail school, testified on behalf of Mitchell. Rankin noted that Mitchell had passed the GED examination and was "very gifted academically." Rankin also explained how Mitchell played a major role in presenting "Project Inside Out," a theatrical program which links jailhouse youths with high school students. The defense also presented exhibits of various ballads and poems written by Mitchell for the theater project.

Before imposing the sentence, the trial judge explained that he had read and considered all of the evidence presented on Mitchell's behalf. After evaluating all of the evidence, the trial court imposed a sentence of 50 years' imprisonment, which falls within the parameters of the sentencing statute. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).) We, therefore, find no basis for reducing defendant Mitchell's sentence.

We now turn to the appeal of defendant Rafael Mendez. Prior to trial, Mendez motioned to quash his arrest and suppress evidence, alleging that the police lacked probable cause to arrest him. Because there were no police reports verifying that a photographic identification of Mendez was made prior to the arrest of Mendez, the defense asserts that no such identification took place. At the pretrial hearing on the motion, Officer Kusinski testified that he interviewed a neighbor, Jesse Boone, who saw Adrian Mitchell laughing and talking to a "light-skinned Puerto Rican" about the shooting of a nurse in the nearby hospital parking lot. After checking police records, Kusinski learned that Mitchell had been arrested a few days prior with a man named Rafael Mendez. He then showed Boone several pages of photographs, one of which contained Mendez' picture. Boone positively identified Mendez. All of this information was then relayed to arresting Officer Martin, who also knew the license plate number and description of Mendez' car. Martin stated that when he approached Mendez, he was working on his car and he identified himself as Rafael Mendez. Martin told Mendez he wanted to question him about the recent death of a nurse. Mendez responded, "Oh, no. Can I put my tools away ?" Mendez was then taken into custody for questioning. Mendez testified that he only told Martin his name, whereupon Martin put him in the back seat of an unmarked police car and drove him to the station, where he was read his *Miranda* rights.

The trial court weighed the testimony of Officers Kusinski and Martin against that of Defendant Mendez and concluded that there

existed sufficient probable cause to arrest Mendez. Thus, Mendez' motion to quash his arrest and suppress evidence was denied.

■■ On review, the decision of the trial court on a motion to suppress will be sustained unless it is against the manifest weight of the evidence. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766.) Although the trial court commented on the "slipshod" police work of Officer Kusinski, who failed to record the photographic identification in his police reports, the court believed that the identification had taken place. Because this finding turns upon the credibility of the witnesses, we defer to the decision of the trial court in this matter. Moreover, even without the photo identification, the description of Mendez by Boone, the police information records and Mendez' reaction to arresting Officer Martin provided sufficient probable cause for his arrest. We also note that the subsequent trial testimony of Jesse Boone corroborated the claims of Officer Kusinski as to the photographic identification of Mendez.

Secondly, Mendez contends that the photographic identification by Boone was prejudicially suggestive. Four pages of photographs were shown to Boone, containing a total of nine Hispanic individuals and five black individuals. According to Kusinski, five were "light-skinned." Boone testified that he had described Mitchell's accomplice as a 19- or 20-year-old "white guy with glasses." During cross-examination by defense counsel, Boone revealed that there was only one picture of a white male wearing glasses on three of the four pages of photographs he examined. There was no clear testimony as to the photographs on the remaining page.

Prior to trial, defense counsel made an oral motion to suppress the photographic identification as suggestive, but did not submit a written motion until after trial began. Defendant claims the trial court improperly denied this motion without a hearing and requests that we remand for a hearing on the matter. Motions to suppress must be made in writing prior to trial. (Ill. Rev. Stat. 1989, ch. 38, pars. 114—11, 114—12.) However, fundamental fairness may dictate otherwise, such as where defense counsel did not have adequate notice of the grounds for the motion. *People v. Johnson* (1967), 38 Ill. 2d 399, 402-03, 231 N.E.2d 447.

During pretrial discovery, defense counsel requested any information regarding the photographic identification of Mendez. The State did not produce any information prior to the hearing on Mendez' motion to quash his arrest, wherein Officer Kusinski described the photo album he presented to Jesse Boone. After the trial court denied this motion, defense counsel orally motioned to suppress the photographic

identification as prejudicially suggestive, indicating that a written motion would be prepared. Judge Strayhorn denied the oral motion and said that a written motion would be denied as well. On the following morning, defense counsel presented its written motion, which was denied. During trial, the State then introduced into evidence the police photo album which was used by Officer Kusinski. Defense counsel objected on the basis that the admission of such evidence was a violation of the discovery rules and, moreover, defense counsel was never granted a hearing on his motion to suppress the photo album as being suggestive.

■ While we find that the trial court erred in denying defense counsel a hearing on the motion to suppress, we need not necessarily remand this cause for a hearing. Photographic lineups are not *per se* impermissibly suggestive where the defendant's photo is distinguishable from the other pictures or where, as in this case, the defendant is the only subject wearing glasses. (See *People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247; *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.) In addition, even if the photographic arrangement was impermissibly suggestive, the subsequent in-court identification by Jesse Boone was based upon independent knowledge sufficient to overcome the taint of the photographic lineup. (*Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.) Boone testified that he lived next door to Mendez for approximately one year and during that time he saw him between 5 and 10 times per month.

■ Mendez also requests that his sentence be reduced due to rehabilitation potential and genuine remorse for the crime. The trial judge considered the mitigating factors presented on behalf of Mendez, including the fact that Mendez did not actually fire the rifle. Nevertheless, the trial court concluded that Mendez was "equally culpable" for the death of Theresa Demerin. Under the circumstances, we find no basis for reducing the sentence of defendant Mendez.

■ Lastly, both defendants request that we remand this matter to the trial court to correct errors in the mittimus to reflect the proper judgment of the trial court. The mittimus incorrectly states that defendants were convicted of six counts of murder, three counts of armed violence and two counts of unlawful use of a firearm by a felon. Pursuant to Supreme Court Rule 615, this court may correct the mittimus without remanding to the trial court. (134 Ill. 2d R. 615(b)(1).) Therefore, we order that the mittimus be corrected to reflect a sentence of 50 years' imprisonment for each defendant on one count of murder. The remaining counts of murder, armed violence and unlawful use of a firearm by a felon shall be vacated.

922

Based upon the foregoing, the judgment of the Cook County circuit court is hereby affirmed in all other respects.

Affirmed in part; vacated in part.

RIZZI and CERDA, JJ., concur.