THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON McCRAY, Defendant-Appellant.

First District (1st Division)   No. 1—93—2816

Opinion filed June 26, 1995.—Modified on denial of rehearing July 10, 1995.

Michael J. Pelletier and Patricia Mysza, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Latisha Foster, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

On November 12, 1990, Aaron McCray was arrested for a residential burglary committed four days earlier. The trial court allowed police testimony that raised the inference McCray had just committed another residential burglary. This case requires us to decide whether the evidence concerning the second burglary was admissible because it showed the circumstances surrounding the defendant's arrest.

We hold that it was error to admit the evidence. However, for reasons that follow, we affirm the defendant's conviction.

## EVIDENCE AT TRIAL

On November 8, 1990, Gina Speckman was living alone in apartment No. 203 of an 18-story apartment complex at 415 West Fullerton Street in Chicago. She left her apartment at 7:30 a.m. that day, locked the door, but did not engage the deadbolt.

That same day Andrew Debuono, a window washer for Anchor Building Maintenance, was washing windows at the 415 West Fullerton apartment building. At about 10:30 a.m., Debuono left the building through the front entrance to go to a nearby drugstore for a can of soda pop. As he was leaving the building, he encountered a man with crutches and a cast on his leg. Debuono held the front door open for this man, allowing him to enter the building.

Approximately 30 minutes later Debuono saw the man again. Having returned from the drugstore, Debuono went to the roof of the building. From the roof he suspended himself by ropes and rigging over the side of the building. He resumed the job of washing windows and was cleaning windows at the fourth-floor level when he heard a loud bang. Looking down, he saw that the man he had seen earlier on crutches had come through a fire escape door to a small, rooftop landing off the second-floor level. Debuono described the man as "moving fast" and looking "confused" or "lost." The man on crutches ran toward the side of the building, got onto the fire escape and out of Debuono's line of vision.

In the meantime, Gina Speckman returned to her apartment sometime between 10:30 and 11 a.m. that day. When she went to her apartment and attempted to unlock the door, she found that she could not enter because the deadbolt was engaged. Thinking that maintenance had entered her apartment to fix something, Gina called out and asked who was inside her apartment. Gina received no response, but heard loud rustling noises from inside her apartment.

Gina went downstairs to the manager's apartment and learned that no maintenance worker was in her apartment. Gina and the manager returned to Gina's apartment together. They found the door ajar. Inside, Gina discovered that her apartment had been ransacked and several pieces of her good jewelry were missing.

Gina noted that the windows of her apartment had burglar bars on them so that the only exit from the apartment was through the door. At the end of her hallway, however, there was a fire escape door leading to a rooftop landing and exterior fire escape.

Gina called the police. At about 11:55 a.m. Officer Kelly, an evi-

dence technician for the Chicago police department crime lab, arrived. He dusted the apartment for fingerprints and other evidence, but found nothing.

Debuono told the police what he had seen. On November 10, 1990, he was shown a photo array of six pictures. From these pictures he identified defendant McCray as the man on crutches whom he had seen entering the building and leaving on the fire escape on November 8, 1990.

On November 12, 1990, Debuono viewed a lineup in which Mc-Cray participated. Again Debuono was able to identify McCray as the man he had seen on November 8, 1990, at the 415 West Fullerton building. Debuono also made an in-court identification of McCray.

At trial Detective James Contino testified regarding McCray's arrest. On November 12, 1990, Contino and three other detectives went to McCray's residence. When Contino arrived at the residence, Contino observed McCray leaving the building. McCray had a cast on his leg and was walking with the aid of crutches. The detectives followed McCray as he boarded a bus, transferred from one bus to another, and then walked to a residential building at 533 West Wellington. Contino saw McCray enter the building and, approximately 15 minutes later, leave the building. The following testimony was given:

"Q. When you saw the defendant come out of the building, where were you at?

A. I was in my car parked in front of the building.

Q. What did you do—I'm sorry. Strike that. When you saw the defendant come out of the building, did you notice anything different about the defendant?

A. Yes. He was carrying a large bag and also a bundle.

Q. Detective, how was he carrying it when he was walking with crutches?

A. The bag hanged—it was a canvas bag, I believe, it had straps. And he had that in his right-hand using a crutch in the same right-hand. And the bundle he had held between his arm and his waist while using another crutch with his left hand.

Q. What did you see the defendant do when he came out of the building at 533 West Wellington?

A. Now he spoke to a young lady and I then saw the young lady start to help him with the heavy bag he was carrying.

Q. Where was he speaking with the lady in relation to 533 West Wellington?

A. Directly in front of the building.

Q. What did you do at that point?

A. At that point, I announced we were police officers and detained him.

Q. When you say we, who was with you at that point?

A. That would have—that was Bridges and Moran.

Q. When you detained the defendant, was the defendant placed under arrest?

A. Yes, he was.

Q. Did you take possession of what the defendant was carrying?

A. Yes.

Q. What did you find that to contain?

MR. WARD (defense counsel): Objection.

THE COURT: Basis?

MR. BLOCK: Relevance to the case.

MR. WARD: Relevance.

THE COURT: Sustained. Sustained."

Subsequently, Contino testified that he advised McCray of his *Miranda* rights and McCray admitted that he burglarized an apartment on Fullerton and took jewelry. The jewelry, he said, was pawned at several different pawnshops on the south side, under various names. Although Detective Contino visited several pawnshops, none of Gina Speckman's jewelry was recovered.

A jury found McCray guilty of residential burglary and he was sentenced by the court to 25 years' imprisonment.

## DECISION

The State presented evidence that McCray was arrested after police officers followed him from his home, watching him board two buses. They watched him spend 15 minutes in the residential building on Wellington. Then they arrested him as he came out of the building. He was carrying a large bag and a bundle. Police took possession of the bag and bundle. The trial court did not allow the arresting officer to testify to what was in the bag and bundle.

■ The defendant contends the purpose of the evidence was to imply that he had just committed another residential burglary. He refers to the well-recognized principle that evidence of other offenses is inadmissible for the purpose of demonstrating a defendant's disposition or propensity to commit crimes. (*People v. Illgen* (1991), 145 Ill. 2d 353, 364, 583 N.E.2d 515.) The rationale for this rule is that such evidence overpersuades the trier of fact, which is likely to convict the defendant merely because of feelings he is a bad person deserving punishment, rather than on the basis of facts related to the offense on trial. *People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238.

Other crimes evidence will be admitted where it has some relevant purpose, such as demonstrating knowledge, intent, motive, design, plan, identification, or *modus operandi. People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489.

In this case, the State offered the evidence to show the circumstances that led to the defendant's arrest for the residential burglary of November 8. On that basis, the trial court admitted the evidence after denying the defendant's motion *in limine*.[1] The State does not contend the defendant waived his claim that admission of the evidence was prejudicial error.

The issue here is whether there is some exception to the general rule barring other crimes proof when the evidence is offered to provide a narrative of events leading up to the defendant's arrest. We hold that unless there is some relevant purpose to the evidence, connecting the defendant to the offense he is being tried for, there is no such exception.

The State contends the circumstances of arrest evidence in this case were admissible to explain how it came to be that McCray made inculpatory statements and was identified four days after the burglary on trial.

We reject the State's argument. The reason for the arrest of November 12 was not a material issue in this case. Assuaging possible jury curiosity does not justify the risk of admitting potentially prejudicial other crimes evidence. See *People v. Spiezio* (1982), 105 Ill. App. 3d 769, 434 N.E.2d 837.

Our supreme court has refused to recognize the exception urged upon us by the State. In *People v. Richardson* (1988), 123 Ill. 2d 322, 528 N.E.2d 612, the trial court admitted evidence of a robbery committed two years after the murder and armed robbery being tried. The State argued the evidence was admissible to show the circumstances leading to the defendant's arrest. The court said:

> "Although the People assert numerous grounds for admitting evidence of the May 4, 1982, armed robbery, we find no justifiable basis for its admission. Contrary to the People's assertion, the evidence was not admissible merely to show how the investigation unfolded and how defendant came into custody. These purported bases for admission beg the critical question of relevance to prove defendant's commission of the crimes in issue and are not supported by our prior decisions." *Richardson*, 123 Ill. 2d at 344.

After *Richardson*, prosecutors continued to present circumstances of the arrest evidence and trial judges continued to admit it. Some appellate courts referred to circumstances of arrest evidence as an exception to the general rule barring other crimes evidence. See *People v. Fauntleroy* (1991), 224 Ill. App. 3d 140, 586 N.E.2d 292;

---

[1] In this appeal, for the first time, the State takes the alternative position that the evidence could have come in to show McCray's *modus operandi*. That contention comes too late. We will not consider it.

*People v. Smith* (1990), 199 Ill. App. 3d 839, 557 N.E.2d 596; *People v. Hunley* (1989), 189 Ill. App. 3d 24, 545 N.E.2d 188. But see *People v. Bass* (1991), 220 Ill. App. 3d 230, 580 N.E.2d 1274 (error to allow evidence the police reviewed reports of other tavern robberies to explain why the defendant was questioned).

More recently, in *People v. Lewis* (1995), 165 Ill. 2d 305, the supreme court again examined evidence that was admitted to demonstrate steps in the police investigation that led to the defendant's arrest. Over objection, the State was permitted to present evidence that a Federal Bureau of Investigation fingerprint check revealed that the defendant was in custody in California. The State then offered details of the extradition procedure that brought the defendant to Illinois. There, as here, the evidence of other crimes was not direct. It came to the jury by way of inference. That fact, said the court, does not alter the "potentially prejudicial character" of evidence which "suggests or implies that the defendant has engaged in prior criminal activity." *Lewis*, 165 Ill. 2d at 346.

In *Lewis*, the State argued that the evidence was necessary to explain the period of time between a witness' identification of the defendant and the arrest of the defendant. The court recognized that was a purpose other than to show the defendant's propensity to commit crime. But, said the court:

> "[E]vidence of other crimes is not admissible merely to show how the investigation unfolded *unless* such evidence is also relevant to specifically connect the defendant with the crimes for which he is being tried. [Citations.] The limitation applies to prevent the risk of prejudice to a defendant even in the face of the State's legitimate need to present evidence of the steps in its investigation." (Emphasis in original.) *Lewis*, 165 Ill. 2d at 346.

Admission of the other crimes evidence in *Lewis* was held to be error, although harmless.

In this case, it was error to allow testimony concerning the circumstances of the defendant's arrest because it did not connect him to the crime for which he was being tried.

We do not hold that circumstances of the arrest evidence are inadmissible in every case. They may be admitted when relevant to the charge on trial: for example, when relevant for identification of the defendant (*People v. Gonzalez* (1991), 142 Ill. 2d 481, 568 N.E.2d 864) or to rebut claims that the police unjustifiably targeted the defendant (*People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355) or to rebut the defendant's alibi (*People v. Connor* (1988), 177 Ill. App. 3d 532, 532 N.E.2d 520).

When relevance does exist, the courts must guard against

overkill. Extremely inflammatory prior conduct evidence and unnecessary details should be avoided, as they might cause the probative value of the evidence to be substantially outweighed by the danger of unfair prejudice and juror confusion. See *People v. Nunley* (1995), 271 Ill. App. 3d 427.

We must now consider whether the erroneous admission of other crimes evidence requires reversal of the defendant's conviction.

■ Again, we turn to *Lewis*, where the court held the defendant was not unduly prejudiced by the other crimes evidence. There, as here, the jury did not hear direct evidence or argument about the other criminal conduct. There, as here, the evidence against the defendant was persuasive. Further, in this case, the trial judge refused to allow testimony concerning the contents of the large bag and bundle the defendant held in his hands when he was arrested.

We do not believe the evidence tended to "overpersuade" the jury on the issue of the defendant's guilt. For that reason, we affirm the defendant's conviction.

## SENTENCE

■ The judgment order does not conform to the court's oral pronouncement at sentencing and the State concedes that the mittimus should be corrected to reflect the proper sentence imposed by the court. Remandment is unnecessary since this court has the authority to directly order the clerk of the circuit court to make the necessary corrections. (134 Ill. 2d R. 615(b)(1); *People v. Brown* (1993), 255 Ill. App. 3d 425, 647 N.E.2d 340; *People v. Mitchell* (1992), 234 Ill. App. 3d 912, 601 N.E.2d 916.) Accordingly, this court directs the clerk to amend the mittimus to reflect that the 25-year sentence imposed in this case is to be served consecutively to the 15-year sentence imposed in case No. 89—26523 and concurrently to the 15-year sentence imposed in case No. 90—28756.

## CONCLUSION

The defendant's conviction is affirmed.

Judgment affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.