Adrian HENNON, Petitioner–Appellant,

v.

Keith COOPER, Warden, Joliet Correctional Center, Respondent–Appellee.

No. 96–1123.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1997.

Decided March 14, 1997.

Thomas F. Geraghty (argued), Robert P. Burns, Northwestern University Legal Clinic, Chicago, IL, for Petitioner-Appellant.

Penelope Moutoussamy George (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondent-Appellee.

Before POSNER, Chief Judge, and RIPPLE and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

Adrian Hennon was convicted in an Illinois state court in 1989 of first-degree murder and related crimes and was sentenced to 40 years in prison. After exhausting his state remedies, see *People v. Hennon*, 228 Ill. App.3d 759, 170 Ill.Dec. 698, 593 N.E.2d 587, app. denied, 146 Ill.2d 638, 176 Ill.Dec. 809, 602 N.E.2d 463 (1992), he sought habeas corpus in federal district court, lost, and appeals, complaining primarily about the prosecutor's closing argument to the jury.

Gunshots from a passing automobile (a Chevrolet Nova) owned by Hennon killed a young boy named Abdullah Asad and wounded a high school student named Jason Murray near a school in Chicago. A witness named Verrett testified that minutes before the shooting he saw Murray arguing with the occupants of a passing jeep that had brushed Murray. The occupants of the jeep threatened to return. They did, almost immediately, followed by Hennon's Nova. The occupants of the two vehicles, who included Hennon and Terrence Mack, got out and approached Murray, Verrett, and their pals and flashed a street-gang hand sign. The groups argued. Mack (according to Verrett) said, "Shoot him. Shoot him." Instead Hennon, Mack, and the rest of their group got back into the jeep and the Nova and drove off. The Nova returned shortly, however, and, according to Verrett, Hennon was driving. As the car slowed to 10 to 15 miles per hour, Mack leaned out of one of the car's windows with a pistol in his hand and fired eight times.

Three other members of Verrett's and Murray's group corroborated Verrett's testimony, specifically identifying Hennon as the driver of the Nova at the time of the shooting. The defendant was arrested shortly after the shooting—driving the Nova. He testified, however, that he had not been driving at the time of the shooting; that Richard Terrell had been. Terrell himself had said just this in a statement he had given to the police when he was arrested, and Hennon's lawyer was permitted to read the statement to the jury. Another witness backed up Hennon's testimony, and Terrell's statement, that Terrell, not Hennon, had been the driver at the time of the shooting.

Under Illinois law, an individual is legally accountable for the criminal conduct of another when he deliberately assists in planning or committing the crime. 720 ILCS 5/5-2(c). "Accountability" is thus just another word for aiding and abetting. *People v. Williams*, 161 Ill.2d 1, 204 Ill.Dec. 72, 105, 641 N.E.2d 296, 329 (1994); *People v. Robinson*, 120 Ill.App.3d 644, 76 Ill.Dec. 67, 69, 458 N.E.2d 206, 208 (1983). It was as an aider and abettor that Hennon was convicted of

Asad's murder, and neither the sufficiency of the evidence nor the soundness of the instructions to the jury is in question. Hennon argues, however, that his Sixth Amendment right to defend himself was infringed by the trial judge's refusal to schedule Terrell's trial before Hennon's so that Terrell could testify in support of Hennon without fear of incriminating himself. The judge refused because his policy was to schedule trials of severed defendants in the order in which the defendants' names had appeared in the indictment. Terrell, slated under this system to be tried after Hennon, pleaded guilty to first-degree murder after Hennon's trial and was sentenced to 22 years in prison. He had not testified at that trial although as we mentioned Hennon's lawyer was allowed to read to the jury Terrell's statement to the police that he, not Hennon, had been driving at the time of the shooting.

■ Terrell might well have testified for Hennon if, having already been convicted and sentenced, he would no longer have feared incriminating himself by admitting under oath that he had been the driver. But the Constitution does not entitle state criminal defendants to insist that trials of codefendants following severance be conducted in the sequence best designed to obtain the acquittal of one or more of the defendants. (See *Mack v. Peters*, 80 F.3d 230, 235–36 (7th Cir.1996), rejecting the identical argument by Hennon's other codefendant, and cases cited there.) Especially not in a case such as this where the codefendant's testimony is put before the jury in a more credible form than live testimony, which would be subject to cross-examination. Cf. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1352 (7th Cir. 1997).

■ Hennon's more substantial ground of appeal concerns the prosecutor's closing argument, especially the rebuttal portion. The due process clause has been interpreted to forbid prosecutors to obtain jury verdicts by means of statements that are seriously misleading or that otherwise prevent the jury from deliberating rationally about the defendant's guilt. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871–72, 40 L.Ed.2d 431 (1974); *Darden v. Wainwright*,

477 U.S. 168, 181, 106 S.Ct. 2464, 2471–72, 91 L.Ed.2d 144 (1986); *United States ex rel. Shaw v. De Robertis*, 755 F.2d 1279, 1281–82 (7th Cir.1985); *Miller v. Lockhart*, 65 F.3d 676, 683–84 (8th Cir.1995); *Armour v. Salisbury*, 492 F.2d 1032, 1036–37 (6th Cir.1974). Hennon complains that the prosecutor misled the jury about the elements of aiding and abetting and also made improper appeals to the jurors' emotions. The prosecutor told the jury that "passengers can be just as accountable as drivers.... So it really doesn't matter ... if you ... buy that he isn't the driver.... [H]e can be just as guilty if he's a passenger or if he's the driver." Hennon argues that the prosecutor was telling the jury that anyone who was a passenger in the car at the time of the shooting was an aider or abettor, and that would be incorrect; but this is not a necessary, or the most natural, reading of the prosecutor's statement. There was evidence that Hennon was an aider and abettor even if he was a passenger. He had been with Mack when the latter urged that Murray be shot and he had departed with Mack, in his own car, and had returned, with Mack and the others, again in his car. It was a reasonable inference that even if he was not driving, he was there to assist Mack in a plan to shoot Murray. But when the prosecutor added, "Passengers in these drive-by murders get convicted all the time," he went too far. He made it sound as if whenever there is a drive-by murder every occupant of the murder vehicle is an aider and abettor of the murder; and he might also have been understood to be inviting the jury to follow the lead of other juries rather than to make an independent assessment of the facts of this case.

We do not think the prosecutor exceeded the bounds of fair argument when he told the jury, "Without that car [Hennon's Nova], there is no murder." In context, this meant not that the owner of a car used in a crime is an aider and abettor, which would be preposterous—the car might have been stolen from him—but that supplying the car was a material form of assistance, which coupled with the evidence of intent warranted an inference of aiding and abetting. The defense had

gone to great lengths during the trial to prove that Hennon had been a passenger, rather than the driver, and so it was important for the prosecutor to emphasize to the jury that a passenger can be legally accountable for the crimes of another passenger.

But when the prosecutor added that accountability is like a "steel ball and anybody that helped the steel ball go down that ramp" should be found guilty of murder, specifically Hennon who according to the prosecutor had given the "ball two shoves" (owning the car and driving it), he again exceeded the bounds. He made aiding and abetting sound like a strict liability crime. One "shove" was just owning the car, and one shove was enough for liability, the prosecutor implied. But merely owning a car used to commit a crime does not, without more, make one an aider and abettor. The trial judge sustained the defendant's objection, however, and reminded the jury that he, the judge, would instruct them in the law.

The allegedly inflammatory comments are a series of comments that could be interpreted as impugning defense counsel's honesty (for example, defense counsel "want to put barriers in front of you in reaching your verdict," and "when you put a witness on the stand you're vouching for his credibility"), as implying that anyone who requests a jury is guilty ("He also has a right to waive a jury and have Judge Cousins decide his guilt or innocence"), as inviting the jury to convict Hennon in order to indicate their dislike of gang violence ("your verdicts will decide the type of conduct that you're going to tolerate on the streets of our city"), and as frightening the jury ("That is how these gangs operate, like wolf packs"). The first subset of comments, attacking defense counsel, although gratuitous, does not seem seriously prejudicial. The second comment, the one about Hennon's failing to waive his right to a jury trial, while not only gratuitous but improper, strikes us as maladroit rather than prejudicial, since it insults the jury by telling it that juries are more likely than judges to be fooled into acquitting guilty people. The comment about wolf packs might be thought within the bounds of fair comment, given that this is a case of murderous gang violence, cf.

*Di Carlo v. United States*, 6 F.2d 364, 368 (2d Cir.1925) (L.Hand, J.), but is questionable in view of *Darden v. Wainwright, supra*, 477 U.S. at 180 and n. 11, 106 S.Ct. at 2471 and n. 11, where the Supreme Court said that calling the defendant an "animal" was undoubtedly improper. The comment about using the verdict to send a signal also disturbs us. While there is nothing wrong with asking the jury to convict a guilty person and by doing so make clear the jury's commitment to the rule of law, the prosecutor could have been understood to be telling the jury to convict irrespective of Hennon's guilt or innocence, lest an acquittal be interpreted as a green light for street gangs and drive-by killings.

 Taken as a whole, which is the right way to take a series of questionable remarks by a prosecutor, the remarks that we have quoted and a few others to which the defense objected with rather less cause indicate that the prosecutor exceeded the proper bounds of argument. Because a prosecutor is a public official charged with law enforcement, a jury is likely to repose greater trust in his arguments than in those of the defendant's lawyer. The prosecutor must not abuse that trust by misleading the jury about the law or the evidence or about the probity of the defendant's lawyer, or by appealing to jurors' prejudices and fears. Cf. *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), overruled on other grounds, *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); 1 *ABA Standards for Criminal Justice*, Standard 3–5.8, pp. 3–87 to 3–91 (2d ed. 1980). But violations of this duty, even when they are so egregious as to come within range of the due process clause, justify vacating a conviction only if they are likely to have affected the verdict. Given the strength of the evidence against Hennon, this was most unlikely, especially since the judge sustained many objections to the prosecutor's closing argument and repeatedly reminded the jury that they must decide the case in accordance with the instructions that he, the judge, would be giving it.

 Hennon places much weight on the fact that during its deliberations the jury

sent the judge a question as to whether the defendant had to "know what crime is about to be committed." This shows, he argues, that the jury was confused. The judge did not answer the question, so if the answer were "yes" Hennon might have a point. The answer, however, is clearly no. In order to be guilty of aiding and abetting the murder of Asad, Hennon didn't have to know that Mack was going to kill a bystander rather than Murray, *People v. Marshall,* 398 Ill. 256, 75 N.E.2d 310, 313 (1947); cf. *People v. Homes,* 274 Ill.App.3d 612, 211 Ill.Dec. 200, 208, 654 N.E.2d 662, 670 (1995); didn't have to know that Mack was going to kill *anyone,* only that he was going to engage in the kind of extremely reckless conduct (shooting into a crowd) that constitutes murder if someone is killed, 720 ILCS 5/9-1(a)(2); *People v. Mitchell,* 234 Ill.App.3d 912, 176 Ill.Dec. 218, 221, 601 N.E.2d 916, 919 (1992); maybe only had to know that Mack was going to engage in *some* crime with Hennon's assistance, *People v. Terry,* 99 Ill.2d 508, 77 Ill.Dec. 442, 444–46, 460 N.E.2d 746, 748–50 (1984); *Brumley v. Detella,* 83 F.3d 856, 865 (7th Cir.1996). This shows that the jury had not been misled by the prosecutor *to Hennon's detriment.* On the contrary, the jury seems to have been entertaining an erroneously *narrow* conception of aiding and abetting. If they were confused, they were confused in favor of the defendant.

We have discussed the issue of prosecutorial misconduct thus far as if we were reviewing the due process issue de novo, giving no weight to what the district judge or the state courts thought, and thus ignoring the amendments that the Antiterrorism and Effective Death Penalty Act of 1996 made to 28 U.S.C. § 2254. Proceeding in this fashion is simple prudence; although this court has held that the amendments are applicable to cases such as this filed before the statute was passed, *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996) (en banc), cert. granted, — U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997), the issue is now before the Supreme Court, which may disagree with our resolution of it. But however the issue of retroactivity is resolved, the issue of the application of the amendments to cases of prosecutorial misconduct will continue to arise, so we shall go on and consider it.

■ The amendments provide, so far as bears on this case, that a federal court may not grant relief on a claim that has been adjudicated by a state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). There is no contention that the decision by the Illinois Appellate Court affirming Hennon's conviction is contrary to any decision by the U.S. Supreme Court, so we can set the first clause of (d)(1) to one side and ask: Did the Illinois court make an "unreasonable application" of federal law as clearly established by decisions of the Supreme Court? The decisions in question, *Donnelly* and *Darden,* established the principle that misleading and inflammatory argument by a prosecutor denies due process of law if it is likely to have swung the jury against the defendant. The application of the principle involves comparing it with the particular argument to which objection is made and the evidence of the defendant's guilt. Such a comparison is judgmental and the statute commands deference to the state court's judgment by using the word "unreasonable," which is stronger than "erroneous" and maybe stronger than "clearly erroneous." *Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust,* 508 U.S. 602, 623, 113 S.Ct. 2264, 2279–80, 124 L.Ed.2d 539 (1993). Thus the fact that we might disagree with the state court's determination that the prosecutor's remarks did not deny Hennon due process because they are unlikely to have swayed the jury—might think the determination incorrect—would not carry the day for him. It should be plain from our earlier remarks that we do not think Hennon can meet this demanding standard.

Another way to take "unreasonable" in the new law, however, is as having reference to the quality of the reasoning process articulated by the state court in arriving at the determination. On this approach federal judicial review of a state court's determination of an issue of constitutional law arising out of a criminal proceeding is similar to judicial review of an administrative agency's decision,

where courts insist not only that the outcome be reasonable in relation to the evidence but that the agency articulate a rational path connecting the law and the evidence to the outcome. E.g., *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983); *Madison Gas & Elec. Co. v. EPA,* 25 F.3d 526, 529 (7th Cir.1994); *Bastanipour v. INS,* 980 F.2d 1129,1131 (7th Cir.1992). This approach might cause trouble for the state here, because the state court's discussion of the prosecutor's remarks was perfunctory. See 170 Ill.Dec. at 702, 593 N.E.2d at 591.

■ But we do not think the approach is correct. It would place the federal court in just the kind of tutelary relation to the state courts that the recent amendments are designed to end. It would be less appropriate than in the parallel area of administrative review, where the court can remand the case to the administrative agency for a better articulation of its grounds. *SEC v. Chenery Corp.,* 318 U.S. 80, 94–95, 63 S.Ct. 454, 462–63, 87 L.Ed. 626 (1943); *Pension Benefit Guaranty Corp. v. LTV Corp.,* 496 U.S. 633, 653–54, 110 S.Ct. 2668, 2679–80, 110 L.Ed.2d 579 (1990); *Gallo v. Amoco Corp.,* 102 F.3d 918, 923 (7th Cir.1996). A federal court in a habeas corpus proceeding cannot remand the case to the state appellate court for a clarification of that court's opinion; all it can do is order a new trial, though the defendant may have been the victim not of any constitutional error but merely of a failure of judicial articulateness.

We are mindful of language in the *Lindh* opinion that might appear to support the approach in cases such as this in which the issue is unreasonable application of clearly established federal law, rather than what that law is. The opinion compares the federal district court's role in a habeas corpus proceeding to appellate review of a discretionary ruling by a trial court, and notes that the appellate court gives "greater weight to thoughtfully reasoned decisions." 96 F.3d at 877; see also *id.* at 871. And it commends the state appellate court for having written a "careful" opinion. *Id.* at 877. But all that was intended by these observations (for earli-

er the opinion had expressly rejected the analogy to review of administrative action, *id.* at 868) is that *of course* the better the job the state court does in explaining the grounds for its rulings, the more likely those rulings are to withstand further judicial review. That is just realism. It doesn't follow that the criterion of a reasonable determination is whether it is well reasoned. It is not. It is whether the determination is at least minimally consistent with the facts and circumstances of the case. Which it was here, however deficient the discussion of the reasons for so believing by the state appellate court.

AFFIRMED.